UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| ATKINSON CANDY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:02-cv-242-WGH-SEB |
| | ) | |
| KENRAY ASSOCIATES, INC., | ) | |
| CHARLES A. "CHUCK" McGEE, and | ) | |
| KENNETH J. McGEE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JUDSON ATKINSON CANDIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:03-cv-12-WGH-SEB |
| | ) | |
| KENRAY ASSOCIATES, INC., | ) | |
| CHARLES A. "CHUCK" McGEE, and | ) | |
| KENNETH J. McGEE, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFFS' MOTION TO SET ASIDE COVENANT NOT TO EXECUTE BASED UPON FRAUD IN THE INDUCEMENT**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on Plaintiffs' Motion to Set Aside Covenant Not to Execute Based on Fraud in the Inducement filed January 14, 2011.[1] (Dkt. 162-63 in Cause No. 4:02-cv-242-WGH-SEB ("the 2002 case"); Dkt. 132-33 in Cause

---

[1] Pursuant to the Consents of counsel and the Orders of Reference entered by the Honorable Sarah Evans Barker, District Judge, on January 30, 2004.

No. 4:03-cv-12-WGH-SEB ("the 2003 case"). Defendants filed their Response on March 28, 2011. (Dkt. 173 in the 2002 case; Dkt. 143 in the 2003 case). Plaintiffs' Reply was filed on April 15, 2011. (Dkt. 174 in the 2002 case; Dkt. 144 in the 2003 case). On April 25, 2011, Defendants filed a Motion to Strike and Response to Plaintiffs' Reply. (Dkt. 176 in the 2002 case; Dkt. 146 in the 2003 case). The Court issued its Order on December 13, 2011, denying the Motions. (Dkt. 190 in the 2002 case; Dkt. 160 in the 2003 case).

On July 3, 2013, the United States Court of Appeals for the Seventh Circuit issued its Order remanding this case for a further hearing and findings. (Dkt. 202 in the 2002 case; Dkt. 168 in the 2003 case). An evidentiary hearing was held before the Magistrate Judge on October 30, 2013. For purposes of this Entry, the Court must address whether the covenant at issue was fraudulently induced.

## I. Legal Standards to be Applied

**Fraudulent Inducement:**

A covenant not to execute or a settlement agreement – like any other contract – is unenforceable against a party who is fraudulently induced to enter it. *E.g., Tru-Cal, Inc. v. Conrad Kacsik Instrument Systems, Inc.*, 905 N.E.2d 40, 44-45 (Ind. Ct. App. 2009). To prove fraudulent inducement, Plaintiffs must prove five elements:

(1) Defendants made a false, material representation of fact.

(2) Defendants made their misrepresentation with knowledge of, or with reckless disregard toward, its falsity.

>     (3)   Defendants made their misrepresentation with intent to deceive Plaintiffs.
>
>     (4)   Plaintiffs reasonably relied on the misrepresentation.
>
>     (5)   Plaintiffs' reliance on Defendants' misrepresentation proximately caused their injury.

*See Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 155 (Ind. Ct. App. 2005) (as cited in *Judson Atkinson Candies, Inc. v. Kenray Assocs. Inc.*, 719 F.3d 635, 639 (7th Cir. 2013)). A litigant who proves fraudulent inducement may enforce the contract and seek damages, or he may rescind the contract and ask the Court to restore the parties to their original positions. *See Seigel v. Williams*, 818 N.E.2d 510, 514 (Ind. Ct. App. 2004).

**Element 1: Misrepresentation of Fact**

A claim of fraudulent inducement must be based upon a misrepresentation of a past or existing fact. *E.g., Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 409 (Ind. Ct. App. 1995). A misrepresentation of a prior or existing fact is a statement "susceptible to exact knowledge" at the time it is made. *See Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 478 F.Supp.2d 1076, 1089 (S.D. Ind. 2007) (quoting *Vaughn v. General Foods Corp.*, 797 F.2d 1403, 1411 (7th Cir. 1986)) (internal quotations omitted).

A claim of fraudulent inducement cannot be predicated on an action a party has a legal right to perform or on non-performance of an action the party is not legally obligated to perform. *E.g., Maynard*, 657 N.E.2d at 409. Nor can a claim of fraudulent inducement be predicated on a representation as to future conduct, a broken promise, an unfulfilled prediction, a statement of

once-existing intent that has not been carried out, or a subjective statement of belief. *Biberstine v. New York Blower Co.*, 625 N.E.2d 1308, 1315 (Ind. Ct. App. 1993); *see also Vaughn*, 797 F.2d at 1411. An expression of opinion can precipitate a successful fraudulent inducement claim only where it is presented as a statement of fact by a person with special knowledge who knows his statement will be relied upon as one of fact. *See, e.g., Vernon Fire and Cas. Ins. Co. v. Thatcher*, 285 N.E.2d 660, 669-70 (Ind. Ct. App. 1972) (applying *Bailey v. London Guarantee and Accident Co.*, 121 N.E. 128, 133 (Ind. App. 1918) (considering doctor's description of patient's condition)). *See also Vaughn*, 797 F.2d at 1412 (applying *Boltz v. O'Connor*, 90 N.E. 496, 497 (Ind. App. 1910) (considering landowner's representation of value of parcel to buyer he knew was "wholly ignorant" as to the land's value)).

**Element 4: Reasonableness of Reliance**

The element of reliance actually presents two requirements: Plaintiffs must prove not only that they relied on Defendants' misrepresentation, but also that their reliance was reasonable. *Ruff v. Charter Behavioral Health Sys. of Nw. Indiana, Inc.*, 699 N.E.2d 1171, 1174 (Ind. Ct. App. 1998). Ordinarily, the reasonableness of a party's reliance depends on the facts of the case. *See Park 100 Investors, Inc. v. Kartes*, 650 N.E.2d 347, 450 (Ind. Ct. App. 1995).

A party asserting fraudulent inducement generally owes a duty to protect his interests and guard against fraud by exercising such ordinary care, diligence, common sense, and judgment as he has at his disposal. *See id.; see also Ruff*, 699 N.E.2d at 1174-75. In other words, professionals dealing at arm's length

must exercise reasonable prudence.  *Sofaer Global Hedge Fund v. Brightpoint, Inc.*, 2011 WL 2413831 at *9 (S.D. Ind. June 10, 2011) (citing *Plymale v. Upright*, 419 N.E.2d 756, 768 (Ind. Ct. App. 1981)).  A court should consider six factors when determining whether reasonable prudence has been exercised:

> (1) the form of the representations;
>
> (2) the materiality of the representations;
>
> (3) the parties' relationship to one another;
>
> (4) the parties' respective knowledge and means of knowledge;
>
> (5) the party to whom the representations were made; and
>
> (6) the parties' respective character, intelligence, experience, age, and mental and physical condition.

*Id.* (*citing Plymale*, 419 N.E.2d at 761 n.4).  "Where persons stand mentally on equal footing, and in no fiduciary relation, the law will not protect one who fails to exercise common sense and judgment."  *Ruff*, 699 N.E.2d at 1175.

Despite the requirement of reasonable prudence, the law "will not ignore an intentional fraud practiced on the unwary."  *See Sofaer*, 2011 WL 2413831 at *9 (quoting *Plymale*, 419 N.E.2d at 768) (internal quotation marks omitted). Reasonable prudence is not required where the party against whom fraudulent inducement has been asserted has prevented the exercise of due diligence by trickery or by manipulating his relationship of trust or confidence with the party asserting fraud.  *Ruff*, 699 N.E.2d at 1175.  A party is entitled to rely on representations as to matters he could reasonably expect the other to know as a matter of fact, or to look up (*e.g.*, the terms of an insurance policy), but it is

unreasonable to rely on representations as to matters that amount to subjective opinions (*e.g.*, advice as to the fairness of a settlement offer). *See Darst v. Illinois Farmers Ins. Co.*, 716 N.E.2d 579, 582 (Ind. Ct. App. 1999).

## II. Factual Findings

The Court finds as follows:

1. The Covenant Not to Execute at issue in this case was signed during the middle of the trial of this lawsuit.

2. The issues pending before the Court during this trial included allegations that:

   (a) Defendants violated the Texas Deceptive Trade Practices Act (or its Indiana counterpart); and

   (b) Defendant Kenray Associates, Inc.'s corporate veil should be pierced and personal liability imposed upon the individually named Defendants.

3. Defendants believed, and a reasonable person could also believe, that these tort-like claims would be covered by Defendants' Commercial General Liability ("CGL") Policy and Umbrella Policy.

4. A declaratory judgment action seeking coverage under Defendants' CGL Policy and Umbrella Policy for the claims pending in this lawsuit had in fact been filed and was being pursued in a state court action under Cause No. 22D01-0406-PL-0209.

5. At the time of the representations made to induce the Covenant Not to Execute at issue in this Motion, the McGees incorrectly, but subjectively, believed that the "Umbrella" Policy would provide coverage for additional claims

6

beyond those covered by the CGL Policy and might cover the unique and tort-like claims pending before this Court.

6. The negotiations and discussions between the parties at the time of the execution of the Covenant Not to Execute primarily concerned the already pending declaratory judgment action. Any purported claims for "errors and omissions" to be brought against the Defendants' insurance agent had not and would not accrue until there had been a determination that no coverage existed in the pending declaratory judgment action.

7. Such a "claim" against an insurance agent did not exist at the time of the execution of the Covenant Not to Execute because no determination had yet been made as to whether coverage existed under the CGL Policy and Umbrella Policy purchased by the McGees. At the time of the execution of the Covenant, paragraphs 3 and 4 were promises to perform in the future, or subjective beliefs that a claim for errors and omissions could be brought against the insurance agent, and were not statements of <u>fact</u>.

8. Plaintiffs have not proven that any of the Defendants made a material misrepresentation of a "fact" that relates to the assignment of any errors and omissions "claims" specified in paragraphs 3 and 4 of the Covenant Not to Execute. (Dkt. 163-3 in the 2002 case; Dkt. 133-3 in the 2003 case).

    (a)    The only direct representation to Plaintiffs themselves proven to have occurred is found in the deposition of Eric Atkinson, reflected in the following deposition testimony:

        Q:    Okay. Can you tell me specifically what those conversations were about?

> A: Well, there wasn't a lot of conversing going on. We simply – I think I said something to the effect that, "Chuck, I really hope you got that insurance," and he and his dad both said "Yes, we do, don't worry about it." So that's kind of the extent of it.

Atkinson Deposition, p. 18.

(b) The only representation made to Plaintiffs by Defendants or Defendants' counsel was not a misrepresentation of a <u>fact</u>:

> Q: Okay. Were there any – do you recall any specific statements, either by the McGees or defense counsel to you, about the errors and omissions claim against Glenn Smith or the Callistus Smith Agency?
>
> A: That was all being discussed at the same time that we were talking about the Hoosier Insurance Company.
>
> Q: Okay. Do you have any recollection of any specific statements, though, anything that sticks in your mind as we sit here today?
>
> A: Well, yes, there's some things, like that the agent had made representations to the McGees and that they thought that they had coverage under the policy; and if they didn't have coverage under the policy, then they would go back after the agent because he had made them think that they did, or something along those lines.

Atkinson Deposition, p. 22.

(c) The representation found in paragraph 8(a) above – that they (McGees) thought they had "that insurance" – is not a <u>fact</u>, but is rather a subjective statement of belief or an opinion that a party has a "legal right to perform" an act.

(d) With respect to a conversation alleged to have occurred when Mr. McGee was involved in the discovery process at his office without Mr. Hancock present, Plaintiffs have not proven by a

8

preponderance of the evidence that any statement of <u>fact</u> was made during that conversation.

(e) The representation found in paragraph 8(b) above made by Defendants or Defendants' counsel to Plaintiffs' counsel – that "then they would go back after the agent because he had made them think that they did" – did not include any predictions of success or state a basis or legal theory for that claim.

9. Even if some possible statement of fact was made, Plaintiffs have not shown that they relied upon those representations to enter into the agreement.

(a) Any representations made by the McGees during the in-court negotiations period occurred after the Covenant was signed. Specifically, the testimony of Atkinson states:

> Q: Do you recall when that conversation [that McGee had coverage] would have taken place? Is that – was that something that occurred early on in negotiations or was it after this deal was signed?
>
> A: After the deal was signed.
>
> Q: Okay. So you had this conversation with them sometime after all the signatures were in place?
>
> A: Yes, sir.

Atkinson Deposition, p. 19.

10. Even if representations that the insurance agent "made them think" they had coverage would be deemed "factual" and were made at a time prior to the execution of the Covenant at issue, it was not reasonable for Plaintiffs to rely on those representations. This is because it was not reasonably prudent to accept representations that "claims" against an insurance agent–which were not yet in existence–were viable without obtaining more specific information about the relationship between the Defendants and their insurance agent.

9

**Conclusion**

In summary, the Court concludes that at the time the parties negotiated the Covenant Not to Execute here at issue, Defendants were told by their agent that their CGL Policy and Umbrella Policy would not provide coverage for "Breach of Contract" claims that software provided by their company was defective.

However, the lawsuit brought by the Plaintiffs contained counts alleging that Defendants violated the Texas Deceptive Trade Practices Act (or its Indiana counterpart), in addition to Breach of Contract, and the suit further sought individual liability against shareholders, and sought to pierce the corporate veil. (See Second Amended Complaint, Dkt. 37). To this Court, and certainly to the reasonable layperson, a complaint alleging violation of the Deceptive Trade Practices Act–and containing claims seeking to impose <u>personal</u> liability–seeks "tort-like" liability and damages. A reasonable layman could believe that notwithstanding the fact that they did not carry "professional liability" or "E&O" coverage, nevertheless their CGL Policy and Umbrella Policy might provide coverage for such claims.

Thus, although Defendants made representations that "the agent made us think we had coverage," those representations are insufficient to sustain the Plaintiffs' burden of fraud in the inducement. First, representations that "the agent made us think we had coverage" are not sufficiently factual. Case law is clear that "unfulfilled predictions" are not facts. Thus, Plaintiffs have failed to meet the first element necessary to find fraudulent inducement.

Second, even if these representations were sufficiently factual, Plaintiffs have not shown that they were made with reckless disregard toward their falsity and/or with the intent to deceive.  For the reasons stated above, Defendants could have subjectively and reasonably believed there was coverage for at least some counts of the Complaint under the CGL and Umbrella policies.  Plaintiffs have, therefore, failed to satisfy the second and third elements of fraudulent intent.

Third, Plaintiffs have failed to prove that the statements were made prior to executing the Covenant Not to Execute and therefore have not shown actual reliance.  No proximate cause – as required by the fifth element to establish fraudulent inducement – has been proven.

And, finally, even if the statements were made prior to the execution of the Covenant, it would not have been reasonable to rely on them.  Reasonable reliance, where attorneys are involved, requires some prudent investigation of the policies, and where coverage litigation exists, review of that litigation.  Simply accepting an opposing party's counsel's "prediction" that an errors and omissions "claim" might be made in the future does not satisfy the degree of diligence required by law to constitute reasonable reliance.  The fourth element of the test is therefore also not satisfied.

For these reasons, Plaintiffs have failed to prove the elements necessary to prevail in their Motion to Set Aside Covenant Not to Execute Based on Fraud in the Inducement, and the Motion is **DENIED.**  The Agreed Judgments entered

December 7, 2004, remain in effect.[2]  (Dkt. 156 in the 2002 case; Dkt. 126 in the 2003 case).  Perhaps the lesson to be learned here is that notwithstanding very competent work by Plaintiffs' counsel in attempting to structure a settlement, the best time to do so is not in the middle of a trial when pressures are at maximum levels.

**IT IS SO ORDERED** the 23rd  day of January, 2014.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Served electronically on all ECF-registered counsel of record**.

---

[2]Because the Agreed Judgments remain in effect, the Clerk is **DIRECTED** to close these matters on the Court's docket.